**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| GINA RENEE JONES, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. 4:21-CV-00895-SDJ- |
| | § | CAN |
| COMMISSIONER, SSA, | § | |
| | § | |
| Defendant. | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff brings this appeal pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for benefits. After reviewing the Briefs submitted by the Parties, as well as the evidence contained in the administrative record, the Court recommends that the Commissioner's decision be **AFFIRMED**.

**RELEVANT PROCEDURAL HISTORY**

This case has a lengthy procedural history. Relevant here, on August 8, 2013, Gina Renee Jones ("Plaintiff") filed an application for Title II disability insurance benefits and on August 13, 2013, an application for Title XVI supplemental security benefits [TR 116, 103-131, 146]. Plaintiff initially alleged disability as of May 17, 2012, but later amended her onset of disability date to September 18, 2012 [TR 1165]. Plaintiff's claim was initially denied on February 4, 2014 [TR 29, 149-152], and again upon reconsideration on May 15, 2014 [TR 1-4, 29]. Subsequently, Plaintiff underwent multiple administrative hearings and received three unfavorable ALJ Decisions, the final decision culminating in the instant appeal, as outlined *infra*.

***December 2015 ALJ Decision***

After a hearing on Plaintiff's application on August 11, 2015 ("First Hearing"), ALJ Finnie issued an unfavorable decision on December 29, 2015 ("2015 ALJ Decision") [TR 29-44]. Plaintiff requested review of the ALJ's decision on February 1, 2016 [TR 17-18], which the Appeals Council denied on December 14, 2016 [TR 1]. On February 8, 2017, Plaintiff appealed the ALJ Finnie's decision to this Court. *Jones v. Comm'r*, 4:17-cv-00092-RAS-CAN, ECF No. 1. Ultimately, the undersigned recommended remanding the case back to the ALJ for failing to weigh the medical opinion evidence, specifically examining physician Dr. Futrell, properly. *Jones v. Comm'r*, 4:17-cv-00092-RAS-CAN, ECF No. 17 (E.D. Tex. Feb. 14, 2018). The Honorable Richard Schell adopted this opinion on March 26, 2018. *Jones v. Comm'r*, 4:17-cv-00092-RAS-CAN, ECF No. 19. The case was submitted back to ALJ Finnie [TR 1287-1292].

***April 2019 ALJ Decision***

On November 27, 2018, ALJ Finnie convened a second hearing ("Second Hearing") [TR 1188-1218]. On April 2, 2019, ALJ Finnie again issued an unfavorable decision ("2019 ALJ Decision") [TR 1299-1322]. Plaintiff requested review of the ALJ's Decision before the Appeals Council, which was granted on September 23, 2019 [TR 13-23-1328]. The Appeals Council vacated ALJ Finnie's decision and remanded for further proceedings, directing the ALJ to,

- Comply with the district court's remand order by evaluating and weighing Dr. Futrell's assessment in accordance with 20 CFR 404.1527(c)
- Give further consideration to the medical opinion evidence pursuant to the provisions of 20 CFR 404.1527, and explain the weight given to such opinion evidence. As appropriate, the Administrative Law Judge may request that the treating and nontreating sources provide additional evidence and/or further clarification of their opinions (20 CFR 404.1520b).
- Give further consideration to the claimant's maximum residual functional capacity in light of the reconsidered opinion evidence and provide appropriate rationale with specific references to evidence of record in support of the

assessed limitations (20 CFR 404.1545 and Social Security Ruling 85-16 and 96-8p).

- If warranted by the expanded record, obtain evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Social Security Ruling 83-14). The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 404.1566). Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00 -4p).

[TR 1325-1326].

### April 2020 ALJ Decision

Although the Appeals Council indicated a new hearing was not required, a third hearing was held on February 5, 2020 ("Third Hearing") [TR 1219-1242]. On April 17, 2020, ALJ Cichanowicz issued a further unfavorable decision ("2020 ALJ Decision") [TR 1159-1187]. The 2020 ALJ Decision spans almost thirty pages and includes an exhaustive review of the medical opinion evidence of record. ALJ Cichanowicz made the following sequential evaluation [TR 1159-1187]. At step one, ALJ found that the Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2015, and the Plaintiff had not engaged in substantial gainful activity during the period from her amended onset date of September 18, 2012, through her date last insured of December 31, 2015 [TR 1165]. At step two, ALJ Cichanowicz found that since the alleged onset date Plaintiff has had the following severe impairments: lumbar spine degenerative disc disease, obesity, anxiety, depression, and bipolar disorder [TR 1165]. Also at step two, ALJ Cichanowicz found Plaintiff had the following non-severe impairments: coronary artery disease, restless leg syndrome, diabetes mellitus, hypertension, foot callouses, obstructive sleep apnea, irritable bowel syndrome, upper extremity osteoarthritis, chronic obstructive

pulmonary disease, borderline intellectual functioning, fibromyalgia, and peripheral neuropathy [TR 1165]. At step three, ALJ Finnie found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526) [TR 1166]. At step four, ALJ Cichanowicz, found that

> [T]hrough the date last insured, the claimant had the residual functional capacity to perform lightwork as defined in 20 CFR 404.1567(b) except lift, carry, push, and pull up to 20 pounds occasionally and 10 pounds frequently; stand or walk for 6 hours out of an 8-hour day; sit for 6 hours out of an 8-hour day; occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; avoid pulmonary irritants such as excessive fumes, odors, dust, and gases; perform simple and routine tasks; tolerate occasional changes in work setting; make simple work-related decisions; and perform jobs that have simple and direct supervision and no more than occasional interaction with coworkers and with the general public as part of job duties.

[TR 1168]. Continuing the step four analysis, ALJ Cichanowicz determined that Plaintiff is unable to perform any past relevant work [TR 1175]. At step five, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, ALJ Cichanowicz found that there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed, such as electronics worker, price marker, and assembler [TR 1176-1177]. Based on this determination, ALJ Cichanowicz concluded Plaintiff not disabled at step five of the sequential analysis under § 216(i) and § 223(d) of the Act from September 12, 2012, the amended onset date, through December 31, 2015, the last date insured [TR 1177].

Plaintiff requested review of the ALJ's decision by the Appeals Council, which was denied on September 10, 2021, making the decision of ALJ Finnie the final decision of the Commissioner [TR 1152-1156]. On November 9, 2021, Plaintiff filed the instant suit [Dkt. 1]. Plaintiff filed his Opening Brief on February 17, 2022 [Dkt. 12], the Commissioner filed its Brief in Support on April 15, 2022 [Dkt. 14], Plaintiff filed her Reply on April 25, 2022 [Dkt. 16].

## STANDARD OF REVIEW

In an appeal under § 405(g), this Court must review the Commissioner's decision to determine whether there is substantial evidence in the record to support the Commissioner's factual findings and whether the Commissioner applied the proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. § 405(g).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985); *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983).  This Court cannot reweigh the evidence or substitute its judgment for that of the Commissioner.  *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1995).  Additionally, any conflicts in the evidence, including the medical evidence, are resolved by the ALJ, not the reviewing court.  *Carry v. Heckler*, 750 F.2d 479, 484 (5th Cir. 1985).

The legal standard for determining disability under Titles II and XVI of the Act is whether the claimant is unable to perform substantial gainful activity for at least twelve months because of a medically determinable impairment.  42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *see also Cook*, 750 F.2d at 393.  "Substantial gainful activity" is determined by a five-step sequential evaluation process, as described above.  20 C.F.R. § 404.1520(a)(4).

## ANALYSIS

Plaintiff raises the following issues on appeal: (1) whether the ALJ erred in not properly considering all of Plaintiff's vocationally significant impairments at Step Two and the functional limitations associated with such impairments at Step Four in determining Plaintiff's RFC; and (2) whether the ALJ erred in evaluating the medical opinions of consultative examiner Steven Futrell, Psy.D, consultative examiner Robert Beck, Ph.D., Kimberly Crawford, M.D., Matthew Richardson PA-C, and Dan McCaig, LCSW [Dkt. 12].

***Prior Decisions Have No Preclusive Effect on 2020 ALJ Decision***

As an initial matter, Plaintiff argues that the 2020 ALJ Decision finding her "vocationally significant impairments" to be not severe, including specifically her neuropathy, diabetes, hand impairment, and obsessive compulsive disorder ("OCD"), at Step Two constitutes error [Dkt. 12 at 5-10]. In furtherance of this argument, Plaintiff points to the two prior ALJ decisions, the 2015 ALJ Decision and 2019 ALJ Decision, where ALJ Finnie found Plaintiff's neuropathy, diabetes, and OCD constituted "severe" impairments [Dkt. 12 at 5]. However, in reaching the 2020 ALJ Decision, ALJ Cichanowicz was not bound in any way by the prior decisions of ALJ Finnie and "was fully entitled to make new findings of fact without needing to explain why those findings differed from a previous, vacated decision." *Farmer v. Comm'r,* No. 1:12-cv-2579, 2018 WL 3750976, at *9 (N.D. Ga. July 10, 2018) (rejecting plaintiff's argument that the ALJ needed to explain his departures from the first decision), *report and recommendation adopted*, No. 1:17-cv-2579, 2018 WL 3744197 (N.D. Ga. Aug. 6, 2018); *see also Mendez v. Saul*, No. 7:19-cv-291, 2021 WL 1217376, at *2 n.2 (S.D. Tex. Jan. 6, 2021) ("Although the findings and conclusions of the two ALJs differed, the second ALJ was not bound by the findings of the first ALJ."), *report and recommendation adopted*, M-19-291, 2021 WL 1215842 (S.D. Tex. Mar. 31, 2021).[1]

---

[1] Moreover, while Plaintiff is correct that ALJ Finnie found Plaintiff's neuropathy, diabetes, and OCD "severe" at Step Two and ALJ Cichanowicz did not, carrying such contention forward, seemingly curtails Plaintiff's ability to demonstrate harmful error based on any alleged Step Two error in the 2020 ALJ Decision, discussed more fully *infra*. For if the Court were to look to ALJ Finnie's prior Decisions and find them persuasive on the issue of severity, then the Court must necessarily also consider and find relevant the remainder of such prior decisions. At step four, ALJ Finnie assessed Plaintiff's RFC in the 2015 ALJ Decision and 2019 ALJ Decision as follows:

2015 ALJ Decision:
After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform less than a full range of light work as defined in 20 CFR 404.1567(b). The claimant could lift and/or carry 20 pounds occasionally, lift and/or carry 10 pounds frequently, stand and/or walk, in combination, for 6 hours in an 8-hour workday, and sit for 6 hours in an 8-hour workday. The claimant has the inability to climb ladders, ropes, or scaffolds and must avoid exposure to fumes, odors, and dust. The claimant retains the ability to understand, remember, and carry out simple, repetitive, and routine tasks and instructions with no more than occasional contact with the general public [TR 1252].

*Severity Findings at Step Two*

"[A] 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S. § 423(d)(3). At Step Two, the ALJ must consider the severity of an impairment or combination of impairments to determine if the claimant is disabled. An impairment is not severe "if you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities."

---

2019 ALJ Decision:
After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant has the residual functional capacity to perform less than a full range of light work as defined in 20 CFR 404.1567(b) in that she could lift and/or carry 20 pounds occasionally, lift and/or carry 10 pounds frequently, stand/walk for 6 hours in an 8-hour workday, and sit for 6 hours in an 8-hour workday. She must have avoided climbing ladders, ropes, or scaffolds. The claimant must have avoided exposure to fumes, odors, dust, gases and environments with poor ventilation. She is limited simple, routine tasks, learned by rote or demonstration, with simple instructions few work place changes, little judgment required, and simple and direct supervision with no more than occasional contact with the general public [TR 1306].

Plaintiff does not now contend that ALJ Finnie's RFCs do not adequately address the impact of Plaintiff's impairments of neuropathy, diabetes, and OCD; and, in Plaintiff's prior case before the undersigned no issues were raised on appeal related to Plaintiff's functional limitations associated with these three conditions. ALJ Cichanowicz's RFC determination in the 2020 ALJ Decision is virtually identical to those of ALJ Finnie:

[T]hrough the date last insured, the claimant had the residual functional capacity to perform lightwork as defined in 20 CFR 404.1567(b) except lift, carry, push, and pull up to 20 pounds occasionally and 10 pounds frequently; stand or walk for 6 hours out of an 8-hour day; sit for 6 hours out of an 8-hour day; occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; avoid pulmonary irritants such as excessive fumes, odors, dust, and gases; perform simple and routine tasks; tolerate occasional changes in work setting; make simple work-related decisions; and perform jobs that have simple and direct supervision and no more than occasional interaction with coworkers and with the general public as part of job duties.

[TR 1168]. Indeed, ALJ Cichanowicz includes the same exact limitations as ALJ Finnie regarding irritants, stating Plaintiff must "avoid pulmonary irritants such as excessive fumes, odors, dust, and gases" [TR 1168]. And just as ALJ Finnie provided that Plaintiff was limited to simple routine tasks, simple instructions, few workplace changes, little decision making, direct supervision, and limited interaction with others, so did ALJ Cichanowicz [TR 1168 ("perform simple and routine tasks; tolerate occasional changes in work setting; make simple work-related decisions; and perform jobs that have simple and direct supervision and no more than occasional interaction with coworkers and with the general public as part of job duties.")]. As it relates to physical limitations, ALJ Cichanowicz, in fact, goes further than ALJ Finnie making a more restrictive RFC by including that Plaintiff can only "occasionally balance, stoop, kneel, crouch, and crawl" [TR 1168]. Based on the near identical RFC findings, and that ALJ Cichanowicz continued past Step Two, it is unclear what harm Plaintiff can attribute to any failure to find these three conditions severe. Setting aside the prior ALJ Decisions, the Court returns to Plaintiff's alleged point of error.

20 C.F.R. § 404.1520(a)(4)(ii). The Fifth Circuit interpreted this severity standard in *Stone v. Heckler*, holding "an impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." 752 F.2d 1099, 1101 (5th Cir. 1985) (quoting *Estran v. Heckler*, 745 F.2d 340 (5th Cir. 1984)) (cleaned up).

To establish that a severe impairment is present, a claimant must meet her burden of demonstrating (1) a functional impairment, (2) attributable to a medically determinable impairment, that (3) limits her ability to perform basic work activities. *See Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992); *Stone*, 752 F.2d at 1101. There is no burden on the Commissioner to prove the absence of a claimant's alleged impairments. *See Domingue v. Barnhart*, 388 F.3d 462, 463 (5th Cir. 2004) (burden of establishing the presence of a medically determinable impairment with acceptable medical evidence is on the claimant); *see also Crowley v. Apfel*, 197 F.3d 194, 198 (5th Cir. 1999) (Plaintiff has the burden to present medical evidence that supports her claim of a severe impairment).

Notably, the Fifth Circuit holds that failure to make a severity finding at Step Two generally is not reversible error when an ALJ continues with the sequential evaluation process.[2] *Dise v. Colvin*, 630 F. App'x 322, 324 (5th Cir. 2015) ("[B]ecause the ALJ proceeded to step five of the analysis, any failure to find additional impairment severe at step two does not justify remand.").[3] Indeed, Courts routinely apply a harmless error analysis "if the ALJ shows that the impairments

---

[2] The rationale for this principle is that the severity finding at Step Two is a threshold assessment that allows the ALJ to dismiss a claim without further evaluation. *Factory v. Comm'r*, No. 4:15-CV-00731-CAN, 2017 WL 1177992, at *5 (E.D. Tex. Mar. 29, 2017) (citing *Delgado v. Colvin*, No. 5:13-cv-137, 2014 WL 3361752, at *3-4 (N.D. Tex. July 9, 2014)). Thus, when an ALJ proceeds past Step Two, the case does not turn on the question of severity, but instead, whether the claimant's impairments prevent him or her from performing work. *Id.*

[3] "Procedural perfection is not required unless it affects the substantial rights of a party," and as such, the analysis must go an additional step to determine if there was substantial evidence to support an ALJ's finding that a particular impairment is not severe. *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012).

deemed non-severe were still considered along with any severe impairments in determining whether the claimant meets a listing and, if not, in determining the claimant's residual functional capacity." *Owen v. Comm'r*, No. 2:19-CV-073-RSP, 2020 WL 1663533, at *2 (E.D. Tex. Apr. 3, 2020).[4]

### 2020 ALJ Decision Discussion of Impairments

The 2020 ALJ Decision states the following in finding certain of Plaintiff's alleged impairments non-severe:

> In addition to the above severe impairments, the record demonstrates several nonsevere impairments. The claimant was diagnosed with coronary artery disease. A stent was placed in December 2012 and the claimant had no complications thereafter with normal EKG (see e.g., Exs. B3F/22; B5F/45; B11F; B16F; B18F; B19F; B20F; B26F). Additionally, restless leg syndrome was diagnosed but the claimant's examination was benign (see e.g., Ex. B17F/22-23). ***The claimant was also diagnosed with diabetes mellitus. However, there are no complications in evidence, and the record suggests treatment noncompliance (see e.g., Exs. B3F/9-11; B17F/7- 9,22; B44F/118).*** The claimant's hypertension was controlled with medication (see e.g., Exs. B1F/30; B3F/21) and her foot calluses were treated (see e.g., Exs. B8F/3-4; B54F). The claimant's obstructive sleep apnea was noted as mild (Ex. B5F/18) and her irritable bowel syndrome was treated with medication (see e.g., Ex. B3F/16). The claimant's upper extremity osteoarthritis was also noted as mild (Ex. B1F/42,45). These impairments cause no more than minimal limitations in the claimant's ability to perform basic work activities. They are therefore not severe.
>
> The claimant was also diagnosed with chronic obstructive pulmonary disease (COPD). This was noted as stable, and the record suggests treatment noncompliance. The claimant had normal pulmonary function testing (see e.g., Exs. B1F/30; B3F/9-11,16; B13F/6-7,13; B51F). There was only one exacerbation during the relevant period when the claimant was not on any maintenance therapy at home (Ex. B44F/52,92). This accordingly caused no more than minimal limitations in the claimant's ability to perform basic work activities. It is not severe, but it was considered in limiting the claimant to avoiding pulmonary irritants (SSR 96-8p).
>
> Additionally, the claimant was diagnosed with borderline intellectual functioning (BIF) after obtaining a Full Scale IQ of 78 on a one-time psychological examination

---

[4] To be clear, while ALJs must consider the combined effect of both severe and non-severe limitations in their RFC analysis "the ALJ does not have to include those limitations in the RFC if there is insufficient evidence that they produce limiting effects." *Sistrunk v. Kijakazi*, No. 3:21-cv-413, 2022 WL 3045315, at *2 (S.D. Miss. Aug. 2, 2022).

(Ex. B2F). However, this diagnosis was not carried through the record in most treatment notes. The claimant has semiskilled work history and obtained a certified nurse assistant certificate. She also reported helping her grandchild with homework. When she was later seen by consultative examiner Dr. Beck, she generated a score of 65/100 on the CMA, which is considered to be an estimate of low average intellectual functions (Ex. B10F). Accordingly, this causes no more than minimal limitations in the claimant's ability to perform basic work activities. It is not severe.

A medically determinable impairment may not be established solely based on a claimant's allegations regarding symptoms. Medical signs and laboratory findings, established by medically acceptable clinical or laboratory diagnostic techniques, must show the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged. A physical or mental impairment must be established by objective medical evidence from an acceptable medical source (20 CFR 404.1521, 404.1529; SSR 16-3p). Here, the claimant reported worsening fibromyalgia and requested Hydrocodone (Ex. B3F/18,21). However, there is no evidence of tender point testing, nor other evidence in the record to satisfy SSR 12-2p. Therefore, the claimant's fibromyalgia diagnosis is not a medically determinable impairment, but the claimant's allegations of pain are discussed in more detail below. ***Peripheral neuropathy was diagnosed by the claimant's primary care physician, but the claimant was instructed to follow up with a neurologist for nerve studies (Ex. B3F/12,21). These were normal (Ex. B6F/10), demonstrating the claimant's peripheral neuropathy is not medically determinable.*** Additionally, cervical imaging showed only mild straightening (Ex. B44F/110) and there is no medically determinable cervical degenerative disc disease.

[TR 1165-1166].

### *Neuropathy*

Plaintiff argues that ALJ Cichanowicz erred in finding that Plaintiff's diagnosis of neuropathy was not medically determinable given the treating physician's diagnosis and the State Agency Medical Consultant listing of neuropathy as an impairment [Dkt. 12 at 5-6]. ALJ Cichanowicz articulates that the diagnosis Plaintiff relies upon was made by her primary care physician prior to her referral to a neurologist, Dr. Nwosu, a specialist who specifically evaluated Plaintiff for peripheral neuropathy [TR 1166, 2159-2160]. ALJ Cichanowicz explains, "[p]eripheral neuropathy was diagnosed by the claimant's primary care physician, but the claimant

was instructed to follow up with a neurologist for nerve studies (Ex. B3F/12,21). These studies were normal (Ex. B6F/10), demonstrating the claimant's peripheral neuropathy is not medically determinable" [TR 1166].  This conclusion is supported by Dr. Victoria Nwosu's findings [TR 2152-2179].  On April 18, 2012, Dr. Nwosu's impressions included "symptoms are not consistent with Parkinson's or essential tremor" [TR 2154].   On May 14, 2013, Dr. Victoria Nwosu performed a follow up evaluation of Plaintiff for peripheral neuropathy [TR 2159].  Dr. Nwosu concluded: "Normal study. These electrodiagnostic findings are not consistent with a peripheral neuropathy or other pathology involving peripheral nervous system. Clinical correlation advised" [TR 2160].  Plaintiff saw Dr. Nwosu a month later, on June 5, 2013; during this visit, Dr. Nwosu concluded Plaintiff's neurological exam is intact except for "[p]atchy changes to decreased pinprick and light touch throughout, otherwise normal" [TR 2162].   During her next visit on September 26, 2013, Dr. Nwosu concluded, "Neurologic exam intact except for some patchy changes to pinprick and light touch throughout" [TR 2165].   On March 25, 2014, Dr. Nwosu concluded on her neurologic exam that Plaintiff was "Normal." [TR 2168].  Dr. Nwosu made the same findings during Plaintiff's visits on May 30, 2014, June 30, 2014, and on March 25, 2014 [TR 2172, 2174, 2177].  Dr. Nwosu's March 2014 exam notes find "there is no neurologic issue" [TR 2168].  Plaintiff contends that ALJ Cichanowicz "improperly substituted her own medical judgment to determine that, in the absence of confirming electrodiagnostic studies, peripheral neuropathy cannot be a medically determinable impairment" [Dkt. 12 at 6].  However, this is not the case as her neurologist found Plaintiff did not suffer from peripheral neuropathy or other neurologic issue.

*Diabetes*

Plaintiff avers that the ALJ erred in finding her diabetes as non-severe because the record reflects that her diabetes was uncontrolled [Dkt. 12 at 6-7].  To that end, Plaintiff alleges complaints of difficulty standing, walking, and used her hands and avers that coupled with her neuropathy diagnosis, point toward a severity finding.  However, the medical evidence paints a different picture.  Routinely, her medical providers found her diabetes did not provide complications and noted that she did not adhere to prescribed treatment [TR 1055, 1058, 1060, 1063, 1065, 1069-1070, 1080].  *Maddox v. Comm'r*, No. 4:20-cv-75, 2022 WL 4492731, at *8 (E.D. Tex. Aug. 23, 2022) ("[A]n ALJ has discretion to use a plaintiff's noncompliance with treatment in making a determination about Plaintiff's subjective complaints, as long as the ALJ's conclusions are supported by substantial medical evidence."), *report and recommendation adopted*, No. 4:20-cv-75, 2022 WL 4490140 (E.D. Tex. Sept. 27, 2022).  ALJ Cichanowicz's opinion accurately reflects the medical evidence of record related to Plaintiff's diabetes [TR 1165].

*OCD*

Plaintiff further avers that the ALJ erred in finding OCD as non-severe considering the diagnosis by Drs. Beck and Futrell [Dkt. 12 at 8-9].  However, a one-time visit to a physician who merely notes a diagnosis is not sufficient to establish a disabling impairment.  *See Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983).  There are no other medical records substantively addressing this alleged impairment.  Plaintiff alleges another physician Dr. Wade diagnosed Plaintiff with OCD as well [TR 428]; however, in reviewing the record cited by Plaintiff to support this statement the Court notes that the reference to OCD is not, in fact, a diagnosis by Dr. Wade (a pulmonologist) but a listing of Plaintiff's reported past medical history.  There is also no evidence of any evidence of treatment for this alleged condition.  ALJ Cichanowicz includes the following

discussion in the 2020 ALJ Decision related to consideration of Plaintiff's mental impairments, making clear she was aware of and considered the OCD diagnosis,

> In understanding, remembering or applying information, the claimant had a moderate limitation. The claimant complained of forgetfulness (Ex. B2F). The claimant was seen by consultative examiner Robert Beck, Ph.D. When asked to recall three words, she recalled only one spontaneously and needed a simple cue after 15 minutes. She was unable to recall the immediate past President (Ex. B10F). Some treating examinations showed decreased memory, but details were not provided (see e.g., Ex. B41F/4). However, when seen by Steven Futrell, Psy.D., memory appeared good (Ex. B2F), and the claimant did not have mental symptoms when seen by other medical providers (see e.g., Ex. B17F/13). The claimant reported raising her granddaughter (Ex. B41F/8), including getting her ready for school, taking her to school, dosing her medications, cooking for her, and helping her with homework (Ex. B10F).

> In interacting with others, the claimant had a moderate limitation. At the hearing in November 2018, the claimant testified to anxiety and depression. She described social isolation and problems being around others. The claimant testified she stayed in her bedroom but lived with her husband and granddaughter. She also described panic attacks, trouble with focus, and social avoidance. However, Dr. Futrell noted good eye contact (Ex. B2F). There is no evidence of the claimant's inability to interact appropriately with medical providers. The claimant reported raising her granddaughter (Ex. B41F/8), including getting her ready for school, taking her to school, dosing her medications, cooking for her, and helping her with homework (Ex. B10F).

> With regard to concentrating, persisting or maintaining pace, the claimant had a moderate limitation. The claimant complained of problems with concentration. Dr. Beck noted the claimant was unable to complete the abbreviated trail making task and misplaced the numbers on a clock face. The claimant was oriented times four. She generated a score of 2/8 on Similarities tasks, and 0/8 on Proverbs inducting relatively poor cognition. The claimant was unable to spell the word, "world" backwards but counted down from 5 to 0. The claimant made four errors in counting down from 20, subtracting by threes (Ex. B10F). Some treating examinations showed easy distraction and concentration problems, but details were not provided (see e.g., Ex. B41F/4). However, when seen by Dr. Futrell, attention span was average with average sustained attention (Ex. B2F). Other mental status examinations were benign outside of mood and affect (Exs. B9F/6,12; B15F/2-4). Again, as noted above, the claimant reported raising her granddaughter (Ex. B41F/8), including getting her ready for school, taking her to school, dosing her medications, cooking for her, and helping her with homework (Ex. B10F).

> As for adapting or managing oneself, the claimant had experienced a mild limitation. The claimant reported raising her granddaughter (Ex. B41F/8), including

getting her ready for school, taking her to school, dosing her medications, cooking for her, and helping her with homework (Ex. B10F).

[TR 1167]. ALJ Cichanowicz continues later in the 2020 ALJ Decision,

The claimant also has a history of bipolar disorder and generalized anxiety disorder (see e.g., Ex. B5F/35-36). The claimant was seen by Steven Futrell, Psy.D., in March 2013, for a psychological evaluation. She complained of anxiety, depression, racing thoughts, not staying on task, forgetfulness, flashbacks of trauma, and lack of trust in others. Upon examination, the claimant had good grooming and hygiene. She was cooperative with the evaluation and maintained appropriate eye contact. Sensorium was intact and she was oriented to time, place, person, and situation. Mood and affect were neutral to euthymic. Attention, concentration, and memory appeared good. Attention span was average with average sustained attention. Eye contact was average. Expressive and receptive language skills were both good with fluent speech and good articulation. Thinking was age appropriate and adequately organized, with no signs of unusual preoccupations, irrational beliefs, perceptional distortions, and dangerous urges. During formal testing, the claimant was cooperative but frequently frustrated. However, comprehension of instructions were good. The claimant's Full Scale IQ was 78 with borderline verbal and low average performance abilities. She had mild problems with TRAILS testing. Dr. Futrell diagnosed bipolar I disorder, posttraumatic stress disorder, and ***obsessive-compulsive disorder*** (Ex. B2F).

…

In January 2014, the claimant was seen by consultative examiner Robert Beck, Ph.D. She stated she was a "recluse spider," staying in bed, crying a lot, and not wanting to be around people. She stated she was this way her whole life but it worsened over the years. She also complained of problems with concentration. The claimant stated that she arose every morning and helped her grandchild get ready for school. She also reported she took her to school and gave her granddaughter her medications. The claimant indicated she helped her granddaughter with homework and cooked dinner. Upon examination, affect was labile, agitated, and restless. The claimant conveyed an obsessional quality in her thinking. She was unable to complete the abbreviated trail making task and misplaced the numbers on a clock face. The claimant was oriented times four. She generated a score of 65/100 on the CMA, which is considered to be an estimate of low average intellectual functions. She generated a score of 2/8 on Similarities tasks, and 0/8 on Proverbs inducting relatively poor cognition. The claimant was unable to spell the word, "world" backwards but counted down from 5 to 0. When asked to recall three words, she recalled only one spontaneously and needed a simple cue after 15 minutes. She was unable to recall the immediate past President. The claimant made four errors in counting down from 20, subtracting by threes (Ex. B10F).

…

REPORT AND RECOMMENDATION – Page 14

Dr.Futrell found the claimant had a severe level of depression, moderate to severe level of mania, and a profound level of anxiety. He also found the claimant "reportedly" exhibited irritability that created conflict, excessive talking, or rapid speech; racing thoughts; and impaired concentration. Dr. Futrell found a 67.05 percent chance that a clinically significant attention problem existed. He opined the claimant had average word reading ability and spelling ability, borderline sentence comprehension, and mildly impaired mathematics computations. He also found a significant deficit in grip strength and motor function. This opinion is given partial weight. Dr. Futrell did not treat the claimant and was unable to develop a longitudinal picture of the claimant's symptoms and impairments. He based the opinion on a one-time examination, and the opinion is not stated in vocationally relevant terms. Dr. Futrell noted the claimant "reportedly" exhibited irritability that created conflict, excessive talking, or rapid speech; racing thoughts; and impaired concentration. This is based on the claimant's subjective allegations, as evidence by the use of the term "reportedly." This is also inconsistent with Dr. Futrell's examination, which showed intact memory, attention, and concentration. Dr. Futrell found a 67.05 percent chance that a clinically significant attention problem existed; however, this is not stated in vocationally relevant or definite terms. No weight is given to any limitations on the claimant's use of hands for handling and fingering, as this outside Dr. Futrell's area of expertise as a psychologist. This was a psychological evaluation, and there is no apparent reason why Dr. Futrell assessed grip strength, particularly as he performed no other physical tests. He did not assess what physical impairments might have caused the claimant to experience limited grip strength and made no related medical recommendations as to the upper extremities; rather, he made psychiatric-related recommendations such as therapy and medication (Exs. B2F; B25F). However, the claimant's depression, anxiety, and associated diagnoses, as noted by Dr. Futrell, were considered in determining the above-defined residual functional capacity. He opined the claimant had average word reading ability and spelling ability, borderline sentence comprehension, and mildly impaired mathematics computations. This was considered in finding the claimant can perform simple and routine tasks; tolerate occasional changes in work setting; make simple work-related decisions; and perform jobs that have simple and direct supervision. Additionally, the undersigned notes that even with a limitation to frequent bilateral handling and fingering, which was not ultimately incorporated into the claimant's RFC due to a lack of objective supporting evidence, the vocational expert still found jobs available, as discussed below

…

Dr. Beck found the claimant lacked the ability in maintaining concentration which prevented her from having persistence in her work-related activities, and indicated she would deteriorate in a competitive work setting. However, he also found she could manage finances and she had a low average functional level (Ex. B10F). This is given partial weight. Dr. Beck based the opinion on the claimant's performance on his examination which included disturbances of affect, obsessional thinking,

inability to complete trail making tasks, poor cognitive functioning, and recall of one of three words. The claimant also made four errors in counting down from 20, subtracting by threes. This is discussed in the narrative above, and does support a finding that some limitations are appropriate. However, this was a one-time examination. Dr. Beck did not treat the claimant and was unable to develop a longitudinal picture of the claimant's symptoms and impairments. He reviewed no records other than Dr. Futrell's examination, which was provided by the claimant after his examination. Accordingly, he was not aware of the claimant's overall mental health treatment history, which shows routine and conservative treatment without worsening (see e.g., Ex B41F). The claimant's therapist noted the claimant had mild exacerbation, progression, or side effects (see e.g., Ex. B41F/60). The non-mental health records contain no psychiatric complaints (see e.g., Ex. B17F/13) and there are no intensive or inpatient psychiatric treatments. Additionally, the opinion is internally inconsistent, noting the claimant's apparently poor insight and concentration, but also finding she could manage benefits. It is also not consistent with the claimant's reports of caring for her grandchild including helping with homework, cooking, and taking her to school.

[TR 1170-1173 (emphasis added)]. To be clear, ALJ Cichanowicz noted, as to Dr. Futrell, that although he diagnosed Plaintiff with OCD, "[t]his is [] inconsistent with Dr. Futrell's examination, which showed intact memory, attention, and concentration" [TR 1172]. As to Dr. Beck, she noted that Dr. Beck only had received Dr. Futrell's treatment notes and did not evaluate the longitudinal record from Plaintiff's mental health provider who only found Plaintiff "had mild exacerbation, progression, or side effects" [TR 1173].

### Hand Impairment

Plaintiff also argues that the ALJ erred in finding Plaintiff's hand impairment (reduced hand grip) as non-severe based upon a grip strength test administered by Dr. Futrell [Dkt. 12 at 7-8]. Interestingly, Plaintiff's alleged hand impairment was part of the basis for which this Court found remand necessary in Plaintiff's earlier appeal, *Jones v. Comm'r*, 4:17-cv-00092-RAS-CAN, ECF No. 17 at 11-12. There too Plaintiff pointed to Dr. Futrell's hand grip test. *Jones v. Comm'r*, 4:17-cv-00092-RAS-CAN, ECF No. 17 at 9-11. In that case, the Court found remand necessary, in part, because while the Commissioner argued that Dr. Futrell, a psychologist, was unqualified

to opine on Plaintiff's grip strength, the ALJ himself had not proffered that the medical opinion was being discounted for this reason (being outside of the physician's realm of expertise). *Jones v. Comm'r*, 4:17-cv-00092-RAS-CAN, ECF No. 17 at 11. ALJ Cichanowicz, taking the Court's admonition to heart, opined extensively as to the grip strength test and the reasons for discounting Dr. Futrell's limitations related to any alleged hand impairment.

### *Harmless Error*

Even assuming a failure by the ALJ to find any of these alleged impairments severe at Step Two was in error, this case did not turn on a Step Two finding; it is undisputed that the ALJ found in favor of Plaintiff at Step Two and continued the sequential evaluation. And while Plaintiff argues any Step Two error cannot be found harmless because the ALJ failed to consider the impact of or include limitations for Plaintiff's non-severe impairments in Plaintiff's RFC,[5] a review of the RFC reflects this is not the case. Plaintiff argues that Plaintiff reported her diabetes and neuropathy limit her capacity for sitting, standing, walking, and using her hands [Dkt. 12 at 7]. Plaintiff's RFC includes limitations on standing, walking, and sitting; indeed, the limitations adopted track those found by the SAMCs who as Plaintiff points out listed diabetic neuropathy as one of

---

[5] The RFC is an assessment, based on all the relevant evidence, including, but not limited to: medical history, medical signs, and laboratory findings; the effects of treatment; and reports of daily activities, lay evidence, recorded observations, medical source statements, and work evaluations. SSR 96-8p, 1996 WL 374184, at *5. The RFC provides the claimant's maximum ability to do work on a sustained basis in an ordinary work setting despite his or her impairments. 20 C.F.R. § 416.945(a); *see Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). The RFC is the most a claimant is able to do despite her physical and mental limitations. The ALJ "is responsible for assessing the medical evidence and determining the claimant's residual functional capacity." *Perez v. Heckler*, 777 F.2d 298, 302 (5th Cir. 1985). "The ALJ's RFC decision can be supported by substantial evidence even if he does not specifically discuss all the evidence that supports his decision, or all the evidence that he rejected." *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994). Further to this point, the ALJ as a "factfinder" is not required to incorporate limitations in the RFC that he did not find to be supported by the record. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991); *Kozlowski v. Colvin*, No. 4:13-cv-020-A, 2014 WL 948653, at *7 (N.D. Tex. Mar. 11, 2014). The inquiry for the Court is whether the record as a whole "yields such evidence as would allow a reasonable mind to accept the conclusions reached by the ALJ." *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000); *see Perez v. Barnhart*, 416 F.3d 457, 461 (5th Cir. 2005); *Jones v. Saul*, No. 4:20-CV-00772-BP, 2021 WL 2895867, at *4-5 (N.D. Tex. July 9, 2021) (finding no error where the ALJ determined that [the treating physician's] opinion was inconsistent with the record as to the limitations he expressed).

Plaintiff's impairments [TR 122, 124, 137, 140]. As it relates to Plaintiff's alleged OCD, ALJ Cichanowicz expressly stated the following in formulating the RFC:

> Additionally, the claimant's mental impairments and associated diagnosis were considered in finding she can perform simple and routine tasks; tolerate occasional changes in work setting; make simple work-related decisions; and perform jobs that have simple and direct supervision and no more than occasional interaction with coworkers and with the general public as part of job duties.

[TR 1171-1172]. *See, e.g., Gonzales v. Colvin*, No. 3:15-cv-0685, 2016 WL 107843, at *6, 8 (N.D. Tex. Jan. 11, 2016) (holding that "the ALJ adequately discussed and considered the limiting effects of [Plaintiff's] mental impairments in formulating his RFC" when the ALJ's RFC analysis considered relevant mental health records, reports, and plaintiff's testimony regarding his mental impairments); *Danny R. C. v. Berryhill*, No. 3:17-CV-1682, 2018 WL 4409795, at *15-16 (N.D. Tex. Sep. 17, 2018) (finding no legal error where the ALJ declined to include mental limitations in plaintiff's RFC because the ALJ's "decision reflect[ed] that he considered Plaintiff's mental functioning when performing his RFC analysis."). Similarly, the ALJ expressly addressed Plaintiff's alleged hand impairment in formulating the RFC:

> No weight is given to any limitations on the claimant's use of hands for handling and fingering, as this outside Dr. Futrell's area of expertise as a psychologist. This was a psychological evaluation, and there is no apparent reason why Dr. Futrell assessed grip strength, particularly as he performed no other physical tests. He did not assess what physical impairments might have caused the claimant to experience limited grip strength and made no related medical recommendations as to the upper extremities; rather, he made psychiatric-related recommendations such as therapy and medication….Additionally, the undersigned notes that even with a limitation to frequent bilateral handling and fingering, which was not ultimately incorporated into the claimant's RFC due to a lack of objective supporting evidence, the vocational expert still found jobs available, as discussed below.

[TR 1172-1173]. The 2020 ALJ Decision more than adequately reflects that the impairments deemed non-severe were each still considered in determining the RFC; the ALJ analyzed the disabling effect of each of Plaintiff's impairments.

REPORT AND RECOMMENDATION – Page 18

> However, while the claimant experiences severe impairments, the alleged degree and severity of her impairments are not entirely consistent with the evidence. The claimant's lumbar imaging remained mild (Ex. B44F/47). Dr. Nwosu found no pathology to explain the claimant's reported symptoms and recommended hand weights, which the claimant did not use. There are reports of cane use (see e.g., Exs. B15F; B21F/3) but there is no evidence this was prescribed prior to the claimant's date last insured and there were findings of steady/normal gait (see e.g., Exs. B6F/3; B41F/65). Electrodiagnostic findings were not consistent with a peripheral neuropathy or other pathology involving the peripheral nervous system. The study was normal (Ex. B6F/10). Tremor was noted on only one examination (Ex. B6F/14) and most physical examinations were generally benign (see e.g., Exs. B4F/13,17,20; B17F/8,11,13,22; B43F/36). The claimant's mental health treatment remained entirely routine and conservative during the relevant period without worsening (see e.g., Ex. B41F). The claimant's therapist noted the claimant had mild exacerbation, progression, or side effects (see e.g., Ex. B41F/60). The non-mental health records contain no psychiatric complaints (see e.g., Ex. B17F/13) and there are no intensive or inpatient psychiatric treatments. The claimant reported raising her granddaughter (Ex. B41F/8), including getting her ready for school, taking her to school, dosing her medications, cooking for her, and helping her with homework (Ex. B10F). ***Overall, the record does not support a finding that additional limitations are warranted.***

[TR 1172 (emphasis added)]. Given the consideration of Plaintiff's non-severe impairments at subsequent stages, the weight of Fifth Circuit authority does not necessitate remand here. *See Enriquez v. Acting Comm'r of Soc. Sec. Admin.*, No. EP-3-17-CV-00329, 2018 WL 2293967, at *3 (W.D. Tex. May 18, 2018) (finding that the ALJ committed harmless error because he took into account plaintiff's chief complaints related to her fibromyalgia in formulating the RFC even though he found it non-severe at step two); *see also Gibbons v. Colvin*, No. 3:12-cv-0427, 2013 WL 1293902, at *16 (N.D. Tex. Mar. 30, 2013) (holding if the ALJ erred in failing to recognize certain impairments as severe at step two, this error was harmless because the ALJ considered the impairments in the RFC); *see also Herrera v. Comm'r*, 406 Fed. Appx. 899, 903 (5th Cir. 2010) (per curiam) (holding that the ALJ's failure to assess the severity of a claimant's impairments at step two is not a basis for remand where the ALJ proceeds beyond step two and determines that a claimant, despite severe impairments, retained the RFC to do other work).

### *Evaluating Medical Opinion Evidence*

Plaintiff further argues that she has been prejudiced by the ALJ's refusal to give greater weight to the opinions of her physicians—specifically, as it relates to her treating physician Crawford, consultative examiners Beck and Futrell, and non-medical sources Richardson and McCaig [Dkt. 12 at 10-12]. Plaintiff argues that by rejecting these opinions or giving them less than full weight he effectively rejected all of the medical opinions of record and substituted his own medical judgment in formulating the RFC [Dkt. 12 at 13-14]. The Commissioner contends that the ALJ did not reject any of these opinions and provided good reasons for finding the opinions were entitled to limited or partial weight [Dkt. 14 at 11].[6] Because Plaintiff filed her claim for benefits before March 27, 2017, the ALJ was required to apply the "old treating physician rule", rather than the new SSA rules.  See 20 C.F.R. § 404.1520c (the agency's revised regulations apply to claims filed on or after March 27, 2017); *Dennis v. Comm'r*, No. 2:20-cv-133, 2022 WL 590024, at *3 (S.D. Miss. Jan. 26, 2022) (finding where application for benefits was filed before March 27, 2017, the ALJ should have analyzed Plaintiff's application under the "old treating physician rule" rather than the current persuasiveness analysis), *report and recommendation adopted*, No. 2:20-cv-133, 2022 WL 586772 (S.D. Miss. Feb. 25, 2022).

### *Treating Physician – Dr. Crawford*

Under the regulations applicable to Plaintiff's claim, "a treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is 'well-

---

[6] An opinion that a claimant is disabled or unable to work is an opinion on the legal issue that is reserved for the Commissioner, and accordingly, such an opinion by a physician is never entitled to "controlling weight."  *See* 20 C.F.R. § 404.1527(e); *see also Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003) (explaining that "some opinions by physicians are not medical opinions, and as such have no 'special significance' in the ALJ's determination" and that "[a]mong the opinions by treating doctors that have no special significance are determinations that an applicant is 'disabled' or 'unable to work'").  Although the ALJ must consider all medical opinions in determining the disability status of a benefits claimant, 20 C.F.R. § 404.1527(b), an opinion on the ultimate issue, such as the claimant's disability status under the regulations, is reserved exclusively to the ALJ.  *See* 20 C.F.R. § 404.1527(e)(1).

supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence.'" *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) (citing *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995)) (alteration in original); *see also Esparza v. Berryhill*, No. 3:17-CV-154-L-BK, 2017 WL 6513634, at *4 (N.D. Tex. Nov. 27, 2017) (quoting *Martinez*, 64 F.3d at 176) (standing for same principle), *report and recommendation adopted*, No. 3:17-CV-154-L-BK, 2017 WL 6497898 (N.D. Tex. Dec. 19, 2017). The ALJ may give little or no weight to a treating source's opinion if good cause is shown. *Newton*, 209 F.3d at 455-56 (citing *Greenspan*, 38 F.3d at 237). There is good cause where the treating physician's evidence is conclusory; is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques; or is otherwise unsupported by the evidence. *Id.* at 456 (citations omitted).

On June 21, 2013, Plaintiff's treating physician Dr. Crawford completed a medical source statement, finding Plaintiff could only sit one-hour per day, stand/walk one hour per day [TR 347], only occasionally lift or carry 6-10 pounds [TR 348], had no limitations on repetitive reaching, handling, fingering or lifting [TR 348], but moderate limitations on grasping and fine manipulation [TR 349]. In the medical source statement, Dr. Crawford when asked to state whether Plaintiff was a malingerer, did not select either provided option (yes or no) but instead stated "unknown" [TR 460]. Plaintiff's primary argument is that the ALJ did not provide "good reasons" for rejecting the opinion of Dr. Crawford regarding Plaintiff's manipulative limitations and Plaintiff's ability to sit, stand, walk as well as lift and carry.

While treating physicians' opinions are afforded deference, "ALJs have considerable discretion in assigning weight to medical opinions and may reject the opinion of a physician when the evidence supports a contrary conclusion." *Richardson v. Colvin*, 4:15-cv-0879, 2017 WL

237637, at *10 (N.D. Tex. Jan. 17, 2017) (citing *Newton*, 209 F.3d at 455-456). Here, the ALJ

provided the following reasoning for discounting certain of Dr. Crawford's findings:

> In June 2013, the claimant was seen by Kimberly Crawford, M.D., who noted she had "at least" degenerative disc disease and spondylosis of the lumbar spine. The claimant requested disability forms be completed, and Dr. Crawford indicated she spent one hour evaluating the claimant and filling out the form (Ex. B4F/14). The record documents four treatment visits with Dr. Crawford in June and August 2013 (Ex. B4F/12). During these visits, the claimant had benign examinations (Ex. B4F/13,17,20), with only one examination noting a positive straight leg raise and 4/5 motor strength. This examination occurred on the same date as the claimant's request for disability form completion (Ex. B4F/15). A lumbar x-ray showed mild lumbar spondylosis (Ex. B4F/46). Dr. Crawford noted she did not have prior MRI results she requested from the claimant (Ex. B4F/14).
>
> …
>
> In June 2013, after only two visits with the claimant, Dr. Crawford opined the claimant could sit one hour in an 8-hour day and stand/walk one hour in an 8-hour day, with unscheduled breaks to get up and move around every hour. She found the claimant could occasionally lift and carry up to 10 pounds but never over 10 pounds. Dr. Crawford found the claimant did not have significant limitations with reaching, handling, fingering, or lifting, then found moderate limitations in grasping, turning, and twisting objects; using the fingers and hands; and using the arms. Dr. Crawford found the claimant incapable of even low stress work due to the claimant's report, "I can't deal with people." She opined constant interference with attention and concentration due to pain and fatigue, and indicated the claimant would be absent from work more than three times per month (Exs. B4F/3-10; B31F/23-30). This is given little weight. Dr. Crawford noted the claimant was off balance and had numbness of the legs and feet in the opinion form; however, her treatment notes, consisting of approximately three visits only in 2013, show normal physical examinations. There was only one abnormal examination and that occurred on the same day the claimant requested disability forms be completed (Ex. B4F/15). Dr. Crawford was not provided MRI results that she requested from the claimant. In addition, the opinion is internally inconsistent as it notes there are no limitations with reaching, handling, fingerling, or lifting, but then finds moderate limitations in grasping, turning, and twisting objects; using the fingers and hands; and using the arms. Additionally, when asked if the claimant was a malingerer, Dr. Crawford indicated "unknown" (Ex. B4F/8). The basis of her opinion in finding the claimant incapable of even low stress work was due to the claimant's allegations.

[TR 1169, 1173-1174]. Plaintiff fails to show how the ALJ's analysis is deficient. ALJ

Cichanowicz provided specifics about the inconsistency of Dr. Crawford's Medical Source

Statement and discussed the lacking treatment history from this provider. The inconsistencies

cited are supported by a review of Dr. Crawford's records, which reflect Dr. Crawford saw Plaintiff only twice before completing Plaintiff's disability screening on the third visit. The records contain numerous notes that at the time of completing the medical source statement, Plaintiff had not provided copies of any MRI report and though claimed to have had an MRI was unable to tell Dr. Crawford when or where. Dr. Crawford also noted that she declined to prescribe pain medications to Plaintiff as Plaintiff failed to inform Dr. Crawford that she was on two benzodiazepines and had been dismissed from a prior doctor for not properly taking her pain medications [TR 466-467]. As well, the limitations the ALJ did find on sitting, standing, walking, and on manipulations track those found within other medical opinions in the record, including the SAMCs [TR 124-125; 139-140] (occasionally lift and/or carry 50 pounds; stand and/or walk, sit for a total of about 6 hours in an 8-hour work day; no manipulative limitations)]. Plaintiff's argument is essentially a disagreement with the ALJ's consideration of Dr. Crawford's opinions. The ALJ properly weighed Dr. Crawford's opinion.

### Consultative Examiners -- Drs. Futrell and Beck

Plaintiff contends that the ALJ erred in weighing the opinions of Drs. Beck and Futrell because in discounting their opinions she relied solely on the fact that these doctors only examined Plaintiff once. The Court has included *supra* ALJ Cichanowicz's extensive consideration of Drs. Futrell and Beck (which collectively spans several pages); without belaboring the point, it is clear that ALJ Cichanowicz not only discussed the limited amount of time the examining physicians visited with Plaintiff, she also discussed many other things, including the inconsistencies in their evaluations, and contrasted their opinions against the other medical evidence of record related to Plaintiff's mental health diagnoses, treatment, and prognosis. Moreover, the ALJ did not outright

reject these opinions; rather he only gave them partial weight.  Plaintiff does not show how the ALJ erred in considering these opinions.

### *Non-Medical Sources – Richardson and McCaig*

Lastly, Plaintiff avers that the ALJ erred in failing to give more than little weight to the opinions of Richardson and McCaig.  The Commissioner submits this was not error because neither of these sources are an acceptable medical source.  The law applicable to Plaintiff's case is clear: "A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities."  20 C.F.R. § 404.1513(a)(2).  Richardson, a physician's assistant and McCaig, a social worker are not acceptable medical sources.  *Ihde v. Colvin*, 270 F. Supp. 3d 956, 961 (W.D. Tex. 2017) ("Not acceptable medical sources include nurse practitioners, physicians assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists.").  Notwithstanding, the ALJ provided a thorough analysis explaining why he rejected these opinions.  Consider the following excerpt:

> Matthew Richardson, PA-C, found the claimant had up to moderate to marked limitations understanding and memory, social interactions, and adaptation, with up to marked limitati ns in concentration and persistence. He found she would be absent two to three times per month (Exs. B23F; B40F). This is given little weight. Although he indicated he saw the claimant every three months, there are few underlying treatment notes during the relevant period, so the opinion is unsupported and the extent of the treatment relationship is unknown (see e.g., Ex. B41F/83,95,101,103). Mr. Richardson did not sign many treatment notes (see e.g., Ex. B39F/33,39). For the ones he did sign, he noted the claimant had mild exacerbation, progression, or side effects (see e.g., Ex. B41F/107-109), which does not support his finding of marked limitations. Additionally, BIF was assessed by Mr. Richardson, which is discussed above and not supported by the record. The claimant has semiskilled work history and obtained a certified nurse assistant certificate. She was cooperative on examination and reported strong relationships with family (Ex. B10F). Further, Mr. Richardson is not an acceptable medical source and he included information from the claimant's subjective reports instead of basing the opinion on objective findings.

Dan McCaig, LCSW, found the claimant had moderate to marked limitations in understanding and memory, and up to marked limitations in concentration and persistence, social interactions, and adaptation. He opined the claimant would be absent more than three times per month (Exs. B22F; B38F). This is given little weight. Although he indicated he saw the claimant weekly, there are no treatment notes from Mr. McCaig in evidence, so the opinion is unsupported and the extent of the treatment relationship is unknown. He assessed BIF, which is discussed above and is not supported by the record. The claimant has semiskilled work history and obtained a certified nurse assistant certificate. She was cooperative on examination and reported strong relationships with family (Ex. B10F).

[TR 1174]. The Court does not find the ALJ erred in this evaluation.

The inquiry for the Court is whether the record as a whole "yields such evidence as would allow a reasonable mind to accept the conclusions reached by the ALJ." *Loza*, 219 F.3d at 393.[7] The ALJ's decision shows careful consideration of the medical records and testimony. The record contains evidence which supports the RFC found by the ALJ. *See Gina R. v. Comm'r*, No. 3:19-CV-2038-BK, 2021 WL 1209198, at *3-4 (N.D. Tex. Mar. 30, 2021) (finding substantial evidence for the ALJ's RFC assessment where the full medical record did not support the limitations put forth by the consultative examiner); *Martinez v. Saul*, No. SA-20-CV-00869-ESC, 2021 WL 2253912, at *5-6 (W.D. Tex. June 3, 2021) (finding substantial evidence for the RFC where the ALJ considered all objective medical evidence in the record).

## CONCLUSION AND RECOMMENDATION

Pursuant to the foregoing, it is recommended that the decision of the Administrative Law Judge be **AFFIRMED**.

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate

---

[7] Plaintiff is correct that in determining the RFC the ALJ "must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his or [her] position," *Loza*, 219 F.3d at 393; however, the ALJ (not the Court) interprets and weighs any conflicts in the medical evidence. *See Fontenot v. Colvin*, 661 F. App'x 274, 277 (5th Cir. 2016).

judge.  28 U.S.C. § 636(b)(1)(C).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object.  *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 19th day of December, 2022.**

_____
Christine A. Nowak
UNITED STATES MAGISTRATE JUDGE