UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| GINA RENEE JONES | § |
| | § |
| v. | § CIVIL CASE NO. 4:21-CV-895-SDJ |
| | § |
| COMMISSIONER, SSA | § |

**MEMORANDUM ADOPTING THE REPORT AND
RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

Came on for consideration the Report and Recommendation of the United States Magistrate Judge ("Report"), this matter having been referred to the Magistrate Judge pursuant to 28 U.S.C. § 636. On December 19, 2022, the Report of the Magistrate Judge, (Dkt. #17), was entered containing proposed findings of fact and a recommendation that the final decision of the Commissioner of the Social Security Administration ("Commissioner") be affirmed. Plaintiff Gina Renee Jones timely filed objections, (Dkt. #18), and the Commissioner responded to the objections, (Dkt. #20).

The Court has conducted a de novo review of the objections and the portions of the Report to which Jones specifically objects, and the Court is of the opinion that the findings and conclusions of the Magistrate Judge are correct and that the objections are without merit as to the ultimate findings of the Magistrate Judge. The Court hereby adopts the findings and conclusions of the Magistrate Judge as the findings and conclusions of the Court.

1

## I. BACKGROUND

This is an appeal of the Social Security Administration's ("SSA") decision denying Jones's application for disability insurance benefits. In her claim before the SSA, Jones alleged that she was entitled to disability insurance benefits because she suffered from several conditions, including obesity, neuropathy, diabetes, posttraumatic stress disorder ("PTSD"), obsessive-compulsive disorder ("OCD"), and a hand impairment.

Jones's case has a lengthy procedural history, which the Court will briefly summarize. As detailed in the Report, an SSA Administrative Law Judge ("First ALJ") initially denied Jones's claim in 2015 following a hearing. Jones appealed to this Court, which remanded the case back to the SSA for failing to properly weigh the medical evidence.

On remand, after a second hearing, the First ALJ again denied Jones's claim in a 2019 decision. Jones appealed that decision to the SSA's Appeals Council, which vacated the 2019 decision—in part due to the First ALJ's failure to comply with this Court's remand order—and remanded the case once again.

Although the SSA Appeals Council indicated that no further hearing was necessary, a different SSA Administrative Law Judge ("Second ALJ") held a third hearing the following year and issued a decision again denying Jones's claim—finding that Jones was not disabled within the meaning of the Social Security Act, and, therefore, was not entitled to disability insurance benefits. Because the SSA Appeals Council denied Jones's request for review of the Second ALJ's decision, the Second ALJ's unfavorable decision is the final reviewable decision in this case. *Sims v. Apfel*,

530 U.S. 103, 107, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000); 42 U.S.C. § 405(g). Jones timely appealed that decision to this Court. (Dkt. #1).

Following briefing on the matter, the Magistrate Judge entered the Report finding that Jones's arguments on appeal were without merit and recommending that the Court affirm the Commissioner's decision. Jones timely filed objections to the Report, and those objections are now fully briefed.

## II. LEGAL STANDARD

A party who files timely written objections to a magistrate judge's report and recommendation is entitled to a de novo review of those findings or recommendations to which the party specifically objects. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b)(2)–(3). Review of the SSA's underlying disability decision "is limited to determining whether that decision is supported by substantial evidence and whether the proper legal standards are applied." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (quoting *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000)). "Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion." *Id.* (quoting *Harris*, 209 F.3d at 417).

## III. DISCUSSION

The Second ALJ's decision describes the five-step sequential evaluation process the SSA must use in considering disability applications. Tr. at 1163–65[1]; 20 C.F.R § 404.1520. As described by the Fifth Circuit that process works as follows:

---

[1] (Dkt. #10-1) through (Dkt. #10-55) comprise the Administrative Record ("Tr."). As in the Report, when citing to the record, the Court cites to the Tr.'s internal pagination in the lower right-hand corner of each page rather than to the CM/ECF document number and page.

3

> First, a claimant must not be presently working. Second, a claimant must establish that he has an impairment or combination of impairments which significantly limits his physical or mental ability to do basic work activities. Third, to secure a finding of disability without consideration of age, education, and work experience, a claimant must establish that his impairment meets or equals an impairment enumerated in the listing of impairments in the appendix to the regulations. Fourth, a claimant must establish that his impairment prevents him from doing past relevant work. Finally, the burden shifts to the Secretary to establish that the claimant can perform relevant work. If the Secretary meets this burden, the claimant must then prove that he cannot in fact perform the work suggested.

*McCray v. Kijakazi*, No. 21-60401, 2022 WL 301544, at *2 (5th Cir. Feb. 1, 2022) (quoting *Muse v. Sullivan*, 923 F.2d 785, 789 (5th Cir. 1991)). Under step three, if the ALJ determines that a claimant's impairment corresponds to a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("listing") , the ALJ then determines the claimant's residual functioning capacity ("RFC") to be used in assessing the type of work a claimant can do. 20 C.F.R. § 404.1520. The claimant must satisfy each of the five-steps to qualify for disability insurance benefits. *See id.*

In this case, the Second ALJ determined that Jones did not qualify for disability insurance benefits. At step one, the Second ALJ found that Jones "last met the insured status requirements of the Social Security Act on December 31, 2015" and had "not engage[d] in substantial gainful activity" from her alleged amended onset on September 18, 2012 through her last date insured of December 31, 2015. Tr. at 1166.

At step two, the Second ALJ determined that since her alleged onset date, Jones suffered from the following severe impairments: lumbar spine degenerative disc disease, obesity, anxiety, depression, and bipolar disorder. Tr. at 1166. The

Second ALJ also determined that Jones suffered from the following non-severe impairments during that same period: coronary artery disease, restless leg syndrome, diabetes mellitus, hypertension, foot callouses, obstructive sleep apnea, irritable bowel syndrome, upper extremity osteoarthritis, chronic obstructive pulmonary disease, borderline intellectual functioning, fibromyalgia, and peripheral neuropathy. Tr. at 1165.

At step three, the Second ALJ determined that Jones did not have an impairment or a combination of impairments that met or medically equaled the severity of one of the listings. Tr. at 1166–67. The Second ALJ reached this conclusion based on three factors. *First*, the Second ALJ noted that "[o]besity is not a listed impairment" and there is no evidence in the record to support a finding that Jones experienced "functional limitations caused by medically determinable impairment (MDI) of obesity, alone or in combination with another impairment(s)" that is equivalent to such a listing. Tr. at 1166. *Second*, the Second ALJ expressly considered listing section 1.04 for spinal impairments but determined that such listing was unsupported by the record. Tr. at 1166. And *third*, the Second ALJ determined that "[t]he severity of [Jones's] mental impairments, considered singly and in combination, did not meet or medically equal the criteria of listings 12.04, 12.06, and 12.15." Tr. at 1167. Despite finding that no impairment or combination of impairments met the severity of one of the listings, the Second ALJ proceeded to analyze Jones's RFC. As for Jones's RFC, the Second ALJ found that she could "perform light work as defined in 20 CFR 404.1567(b)" except for several discrete exceptions. Tr. at 1168.

5

At step four, the Second ALJ then determined that Jones could not perform past relevant work. Tr. at 1175–76. However, at step five, the Second ALJ concluded that Jones could make a successful adjustment to other work that exists in significant numbers in the national economy. Tr. at 1176–77. For these reasons, the Second ALJ concluded that Jones had not been under a disability from September 18, 2012, the date Jones alleged that her disability began, through December 31, 2015, the date in which Jones remained insured. Tr. at 1177.

Jones objects that the Second ALJ—and in turn the Magistrate Judge in affirming the Second ALJ—committed reversible legal error by failing to consider her PTSD, OCD, and peripheral neuropathy as severe impairments and failing to include limitations resulting from Jones's OCD and peripheral neuropathy in her RFC. (Dkt. #18). This argument turns on Jones's view that the Second ALJ—and again, the Magistrate Judge in affirming the Second ALJ: (1) erred in not finding her PTSD, OCD, and neuropathy as severe because the First ALJ found them to be severe; (2) failed to adequately weigh the opinions of Drs. Andrew Wade, Victoria Nwosu, and Matthew Jackman in assessing the severity of her neuropathy; (3) failed to adequately weigh the opinions of Drs. Robert Beck and Steven Futrell in assessing the severity of her OCD and neuropathy; (4) failed to question the vocational witness at the third hearing about the effects of distraction and concentration on Jones's ability to perform work-related activities; and (5) erred in not considering her OCD diagnosis as a severe impairment in step two because the Second ALJ did not consider

6

OCD's impairment limitations at subsequent stages of the analysis. None of Jones's objections has merit.

**A. Jones's First Objection**

First, Jones objects that the Second ALJ—and in turn, the Magistrate Judge in affirming the Second ALJ—failed to "include neuropathy, posttraumatic stress disorder, and obsessive-compulsive personality disorder as severe impairments" or to "assess the limitations in residual functional capacity resulting therefrom" even though the First ALJ found to the contrary "on two occasions." (Dkt. #18 at 3); *see also* (Dkt. #18 at 6) ("Thus, by rejecting peripheral neuropathy as a severe impairment, the ALJ's opinion is contradicted . . . by every adjudicator who previously reviewed this case.").

This argument fails as the Magistrate Judge correctly concluded, based on relevant authority, that the vacated First ALJ's decisions had no preclusive effect on the Second ALJ's findings. (Dkt. #17 at 6); *Mendez v. Saul*, No. 7:19-CV-291, 2021 WL 1217376, at *2 n.2 (S.D. Tex. Jan. 6, 2021), *report and recommendation adopted*, No. CV M-19-291, 2021 WL 1215842 (S.D. Tex. Mar. 31, 2021) ("Although the findings and conclusions of the two ALJs differed, the second ALJ was not bound by the findings of the first ALJ.") (citing *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) ("When the Secretary remands cases for re-determination, there is no rule of issue preclusion.")); *see also Steele v. Comm'r, SSA*, No. 4:20-CV-00867-ALM-CAN, 2022 WL 4242834, at *3 (E.D. Tex. Aug. 29, 2022), *report and recommendation adopted*, No. 4:20-CV-867, 2022 WL 4241740 (E.D. Tex. Sept. 14, 2022) ("In reaching the Second Decision, [the ALJ] was not bound by the First Decision and was fully entitled

to make new findings of fact without needing to explain why those findings differed from a previous, vacated decision." (quotations omitted)). Notably, Jones fails to point the Court to any contrary authority, and the Court is unaware of any.

Because the Second ALJ was not bound by the First ALJ's opinions, the Second ALJ was free to come to a different result. Accordingly, the first objection is overruled.

**B. Jones's Second Objection**

Second, Jones contends that the Second ALJ—and in turn, the Magistrate Judge in affirming the Second ALJ—erred in failing to consider neuropathy as a severe impairment based on the medical opinions of Drs. Andrew Wade (pulmonologist), Victoria Nwosu (neurologist), and Matthew Jackman (treating physician, specialty unspecified). As detailed in the Report, with respect to Dr. Nwosu, Jones is incorrect in her characterization of Dr. Nwosu's medical opinion regarding neuropathy. *See* (Dkt. #17 at 10–11). Dr. Nwosu performed an evaluation of Jones for neuropathy in 2013 and concluded: "Normal study. These electrodiagnostic findings are not consistent with a peripheral neuropathy or other pathology involving peripheral nervous system. Clinical correlation advised." Tr. at 2160. And as laid out in the Report, every follow-up evaluation that Dr. Nwosu conducted confirmed her 2013 finding. (Dkt. #17 at 11).

As to Drs. Wade and Jackson, Jones does not point to anything in the record establishing that the Second ALJ or the Magistrate Judge failed to consider those physicians' opinions. In fact, the record establishes that both opinions were considered, but that the SSA ultimately concluded based on the entire record that Jones's neuropathy was "WNL"—or within normal limits—because: "an EMG nerve

8

study showed no evidence of peripheral neuropathy; [Jones's] work-up and labs were normal; her neurologic exam was intact; on physical examination, she displayed normal gait, sensation and full motor strength; and she was prescribed nerve pain medications through June 2014." Tr. at 1153.

Accordingly, as the Second ALJ considered these medical opinions in determining the severity of Jones's neuropathy, this objection is overruled.

**C. Jones's Third Objection**

Third, Jones argues that the Second ALJ—and in turn, the Magistrate Judge in affirming the Second ALJ—failed to properly consider the opinions of psychologists, Drs. Robert Beck and Steven Futrell, in finding her OCD and neuropathy non-severe. (Dkt. #18 at 3–7). As to OCD, she points to three flaws in the Second ALJ's reasoning—the third of which she claims similarly applies to neuropathy. *First*, she contends that the Second ALJ improperly found inconsistencies in Dr. Futrell's opinion even though "the ability to attend and concentrate is not the sole issue presented by" OCD. (Dkt. #18 at 4). *Second*, she states that "nothing in the [Second] ALJ's residual functional capacity assessment considers the effect of obsessive-compulsive symptoms, as displayed by the Plaintiff to both Dr. Futrell and Dr. Beck, upon the Plaintiff's ability to perform work-related activities." (Dkt. #18 at 4). And *third*, she maintains that "[t]he record does not include any such evaluations by other psychologists which would refute the findings of either Dr. Beck, or Dr. Futrell." (Dkt. #18 at 4). These arguments are unavailing.

At the outset, Drs. Beck and Futrell are consultative examiners, not Jones's treating physicians. Tr. at 1167 ("The claimant was seen by consultative examiner

9

Robert Beck, Ph.D."), 1172 ("Dr. Futrell did not treat the claimant and was unable to develop a longitudinal picture of the claimant's symptoms and impairments."). As detailed in the governing regulations, a consultative physician is a "medical or psychological consultant employed or engaged to make medical judgments . . . ." 20 C.F.R. § 404.1526(d). The then-governing regulations,[2] as interpreted by the Fifth Circuit, clearly instruct that the "great weight" deference afforded to the treating physician's opinion, *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000), does not similarly extend to the consultative physician's opinion. 20 C.F.R. § 404.1527(c)(2)[3]; *see also Harrison v. Saul*, No. CV 4:19-2304, 2020 WL 3962135, at *6 (S.D. Tex. July 13, 2020) ("In evaluating the opinion of a non-treating physician, the ALJ is free to incorporate only those limitations that he finds consistent with the weight of the evidence as a whole." (cleaned up)). Accordingly, the Second ALJ had significant discretion in weighing the opinions of Drs. Beck and Futrell, who were both consultative psychologists.

---

[2] While the regulations have since been amended, those amendments are inapplicable here given Jones's claim for benefits was filed before March 27, 2017. *See* 20 C.F.R. § 404.1520(c) (the agency's revised regulations apply to claims filed on or after March 27, 2017).

[3] *See id.* ("Generally, we give more weight to medical opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.").

### i. The Second ALJ Found Multiple Inconsistencies in Dr. Futrell's OCD Diagnosis.

Jones first objects to the Magistrate Judge's failure to find error in the Second ALJ's rejection of Dr. Futrell's OCD diagnosis. To buttress this argument, Jones points to a single sentence in the Second ALJ's decision which states that Dr. Futrell's "opinion is internally inconsistent, [by] noting the claimant's apparently poor insight and concentration, but also finding she could manage benefits." Tr. at 1173. Jones contends that since insight and concentration are not the "sole issue[s] presented by" OCD, the Second ALJ—and in turn, the Magistrate Judge—failed to adequately weigh the totality of Dr. Futrell's opinion, and instead, only took note of one aspect of it. (Dkt. #18 at 4). Jones further contends that the Second ALJ failed to point to any inconsistences in Dr. Futrell's opinion. (Dkt. #18 at 7). Both arguments fail.

As detailed in the Second ALJ's decision, the inconsistency, to which Jones now points, was just *one* of several factors that the Second ALJ considered in weighing Dr. Futrell's opinion concerning OCD. In addition to that inconsistency, the Second ALJ also referenced four other flaws. *First*, the Second ALJ noted that Dr. Futrell examined Jones only once, and he was not her treating physician—thus diminishing the weight of the opinion. Tr. at 1172. *Second*, the Second ALJ determined that Dr. Futrell's OCD diagnosis is inconsistent with Dr. Futrell's *own* examination of Jones which "showed intact memory, attention, and concentration." Tr. at 1172; *see also* Tr. at 1170 (detailing Dr. Futrell's examination of Jones as uncovering normal or average tendencies in the following areas: grooming, hygiene, cooperation, eye contact, sensorium, mood and affect, attention, concentration, memory, expressive and

receptive language skills, thinking, and comprehension). *Third*, the Second ALJ noted that Dr. Futrell partially based his diagnosis on Jones's subjective allegations regarding her feelings, rather than applying objective benchmarks. Tr. at 1172. For example, the Second ALJ pointed to Dr. Futrell's use of the term "reportedly"—referring to information Dr. Futrell obtained solely from the patient, Jones—to describe Jones's alleged "irritability that created conflict, excessive talking, or rapid speech; racing thoughts; and impaired concentration." Tr. at 1172. And *fourth*, the Second ALJ discounted Dr. Futrell's account of Jones's "use of [her] hands for handling and fingering, as this [is] outside Dr. Futrell's area of expertise as a psychologist." Tr. at 1172–73. Accordingly, though Jones may disagree with the findings of the Second ALJ as it relates to Dr. Futrell, the Second ALJ fully evaluated and properly addressed Dr. Futrell's medical opinion. This objection is overruled.

### ii. The Second ALJ's RFC Assessment Properly Considered the Effect of OCD Symptoms.

Jones next contends that the Second ALJ—and in turn, the Magistrate Judge in affirming the Second ALJ—failed to consider her OCD symptoms—detailed by Drs. Beck and Futrell—in the RFC assessment. (Dkt. #18 at 4). As laid out in the Report, this contention is belied by the record. (Dkt. #17 at 17–18). In fact, the Second ALJ expressly noted these OCD-type symptoms in formulating the RFC:

> Additionally, the claimant's mental impairments and associated diagnosis were considered in finding she can perform simple and routine tasks; tolerate occasional changes in work setting; make simple work-related decisions; and perform jobs that have simple and direct supervision and no more than occasional interaction with coworkers and with the general public as part of job duties.

12

Tr. at 1171–72. The Second ALJ need not specifically identify OCD to properly consider its symptoms. As the Second ALJ in fact considered such symptoms, the objection lacks merit. Accordingly, this objection is overruled.

### iii. The Second ALJ Appropriately Weighed the Opinions of Drs. Beck and Futrell In Considering OCD and Neuropathy.

Third, Jones contends that the Second ALJ—and in turn, the Magistrate Judge in affirming the Second ALJ—should have accepted Drs. Beck and Futrell's opinions regarding her OCD and peripheral neuropathy because "[t]he record does not include any such evaluations by other psychologists which would refute" their diagnoses. (Dkt. #18 at 4); *see also* (Dkt. #18 at 6) ("Thus, by rejecting peripheral neuropathy as a severe impairment, the [Second] ALJ's opinion is contradicted by every other medical source . . . who previously reviewed this case."). In essence, Jones objects to the Second ALJ's failure to include OCD and peripheral neuropathy as severe impairments at step two, and thereafter in the RFC analysis, despite Drs. Beck's and Futrell's medical opinions.

While Jones is correct that an ALJ is not permitted to "draw [his own] medical conclusions" in rendering a decision, an ALJ is not, therefore, required to automatically accept a medical professional's opinion. *Bodine v. Saul*, No. 7:20-CV-00044-O-BP, 2021 WL 1326563, at *3 (N.D. Tex. Apr. 8, 2021). To the contrary, an ALJ is "free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995); *see also Dixon v. Comm'r, SSA*, No. 4:18-CV-634, 2019 WL 5875901, at *1 (E.D. Tex. Sept. 27, 2019) (holding that ALJs are not required to match the conclusions offered by medical

13

experts). And importantly so, as ALJs must "determine the credibility of medical experts . . . and . . . weigh their opinions and testimony accordingly." *Fontenot v. Colvin*, 661 F.App'x 274, 277 (5th Cir. 2016) (citing *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990)). Thus, in reaching a final determination, the ALJ must consider the evidence presented underlying a medical expert's conclusion, "weigh the competing opinions, take into consideration all of the other evidence of record, and make a finding that may not be exactly the same as the opinion of any one medical source." *D.J.M. v. Berryhill*, No. 18-CV-0193, 2019 WL 1601491, at *4 (W.D. La. 2019).

Here, as extensively detailed in the Report, there is ample evidence that the Second ALJ appropriately weighed the opinions of Drs. Beck and Futrell as well as all of the other medical evidence in considering Jones's OCD and peripheral neuropathy. At the outset, the Second ALJ *did* consider Jones's peripheral neuropathy as a non-severe impairment, which was factored into her RFC. Tr. at 1165–68. This occurred even though one of Jones's treating physicians, Dr. Nwosu, who examined Jones on multiple occasions, concluded that Jones did not suffer from neuropathy. Tr. at 1165; *see also infra* Section III(B).

For OCD, the Second ALJ did not find that Jones suffered from OCD based on the totality of the medical evidence in the record. As detailed in the Report, the Second ALJ came to this conclusion after finding Drs. Beck and Futrell's opinions non-credible—and with good reason—as their diagnoses were inconsistent with their own examinations of Jones, and the medical records they used to reach their

14

diagnoses also did not support the diagnoses. (Dkt. #17 at 12–16). Further, Drs. Beck and Futrell only examined Jones once, and their findings were not corroborated by any other medical opinions in the record—including by Jones's treating physicians who treated her for extended periods of time. (Dkt. #17 at 12–16); *see also infra* Section III(C). Thus, the Second ALJ appropriately weighed the medical evidence and made a decision that was supported by substantial evidence. *See Webster v. Kijakazi*, 19 F.4th 715, 718–19 (5th Cir. 2021) (holding that substantial evidence supported the ALJ's decision although the record reflected conflicting medical evidence and the ALJ found a treating physician's opinion unpersuasive). Accordingly, this objection similarly fails.

*****

Because the Second ALJ properly considered the opinions, and factual underpinnings of the opinions, of Drs. Beck and Futrell in finding her OCD and neuropathy non-severe, Jones's third objection is overruled.

**D. Jones's Fourth Objection**

Fourth, Jones argues that the Second ALJ—and in turn, the Magistrate Judge in affirming the Second ALJ—erred in failing to question the vocational witness "as to the effect of distraction and concentration problems upon the Plaintiff's ability to perform work-related activities" at the third hearing. (Dkt. #18 at 4–5). This objection fails on its face as the Appeals Council indicated that a third hearing before the Second ALJ was not required. Tr. at 1219–42. But even if it had been required, Jones fails to point to any regulatory or statutory requirement that the Second ALJ ask *any* question at the hearing—let alone this specific question. And the fact that here, the

Second ALJ posed a hypothetical question to the vocational witness, does not change the analysis that such question, or any follow-up thereafter, was not required.

Because this argument is not grounded in law, the objection is overruled.

**E. Jones's Fifth Objection**

Fifth, Jones avers that the Second ALJ's failure to consider her OCD diagnosis as a severe impairment in step two was not "harmless error"—as the Magistrate Judge determined—because the Second ALJ did not consider the impairment limitations at subsequent stages. (Dkt. #18 at 5). This is both incorrect and fully addressed in the Report. (Dkt. #17 at 17–19). As detailed in the Report, the Second ALJ's decision "more than adequately reflects that the impairments deemed non-severe were each still considered in determining the RFC; the [Second] ALJ analyzed the disabling effect of each of Plaintiff's impairments." (Dkt. #17 at 18).

Because this argument is based on an incorrect assumption that the Second ALJ did not consider Jones's impairments at later stages of the analysis, this objection is overruled.

In sum, the Court concludes that the Report correctly determined that the Second ALJ made a decision that was supported by substantial evidence and used proper legal standards to evaluate the evidence. *See Webster v. Kijakazi*, 19 F.4th 715, 718 (5th Cir. 2021).

## IV. CONCLUSION

Based on the foregoing reasons, the Court concludes that Jones's Objections to Report and Recommendation of United States Magistrate Judge, (Dkt. #18), are **OVERRULED**. It is therefore **ORDERED** that the decision of the Commissioner is **AFFIRMED**.

**So ORDERED and SIGNED this 23rd day of March, 2023.**

SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE